576 So.2d 1217 (1991)
Roy J. GATTUSO and Estate of Sam Gattuso d/b/a Gattuso Realty Company
v.
MOTHE LIFE INSURANCE COMPANY.
No. 90-CA-730.
Court of Appeal of Louisiana, Fifth Circuit.
March 13, 1991.
Writ Denied May 17, 1991.
*1218 Nel F. Vezina, Roy J.D. Gattuso, Vezina and Associates (A Professional Law Corporation), Gretna, for plaintiffs-appellees.
Bruce M. Danner, Philip S. Brooks, Metairie, for defendant-appellant.
Before GRISBAUM and GOTHARD, JJ., and CURRAULT, Jr., J. Pro Tem.
NESTOR L. CURRAULT, Jr., Judge Pro Tem.
This is a suit by Roy J. Gattuso and the Estate of Sam Gattuso, d/b/a Gattuso Realty Company (collectively hereinafter Gattuso), seeking to recover real estate commissions allegedly due from Mothe Life Insurance Company (Mothe), the owner/lessor of commercial property which is the subject of a lease wherein Gattuso Realty Company was the original broker between Mothe as lessor and Burger King as lessee. The original lease (the 1965 lease) was executed in 1964, becoming effective on February 1, 1965, for a primary term of twenty years with two five year renewal options. Subsequent leases were executed in 1985 and 1989.
The issue before the trial court and this Court is whether the 1985[1] lease is a renewal and/or extension of the 1965 lease, thus mandating a finding that commissions are due to Gattuso, or whether the 1985 lease is a new contract mandating a dismissal of Gattuso's claims. The trial court found the 1985 lease was in fact a renewal of the 1965 lease and under the provisions of the brokerage agreement contained in the original lease, commissions are due Gattuso. The trial judge cited Latter & Blum, Inc. v. Obolensky, 288 So.2d 370 (4th Cir.1974), writ denied 290 So.2d 909 (La.1974) in support of his ruling. Mothe appeals. We amend and, as amended, affirm.
The facts are not in dispute.
Due to the efforts of Gattuso, a commercial lease was executed on August 5, 1964 and called for a Burger King Restaurant to be built on Mothe's property. The primary term, which began on February 1, 1965, was to expire on January 31, 1985, but the *1219 lease provided for two five year renewal options as follows:
"Lessor hereby grants to Lessee an option to renew this lease for two (2) successive five (5) year terms, upon the same terms and conditions contained herein, provided this lease is in good standing. This option is to be exercised by written notice to Lessor by Lessee at least six (6) months prior to the date of expiration of the then-current term as provided herein. The rental due by Lessee to Lessor in each of the option periods shall be determined by arbitration in accordance with the rules of the American Arbitration Association, which arbitration procedure hereinabove referred to, shall take place sixty (60) days prior to the date Lessee is required to exercise the option to renew this lease."
The lease also called for monthly rents of $1,000.00 and provided Burger King would secure liability insurance. Trial testimony showed Mothe paid taxes due.
The commission provision reads as follows:
"Lessor, his heirs, successors, or assigns, agrees to pay Gattuso Realty Company, his heirs, successors or assigns a cash commission of 5% on the gross rental of this lease up to $25,000.00 yearly and 4% on such amount above $25,000.00 and a similar commission on any extension or renewal, if there be a privilege. Also a commission of 6% on the first $100,000.00 4% on the excess on any agreement to sell or exchange made with or through Lessee." (Emphasis supplied).
By letter dated July 5, 1984, Burger King timely expressed its intention to exercise its option on the lease contract. Thereafter, Mothe and Burger King attempted to negotiate a rental rate for the option period. When it became apparent an agreement could not be reached, Burger King, by letter dated October 31, 1984, saw "no other alternative than to go to arbitration immediately." Apparently Mothe initially agreed with this suggestion as Burger King's letter of December 13, 1984 references enclosed information on the arbitration process requested by Mothe.
Thereafter, Mothe took the position that by failing to institute arbitration proceedings eight months prior to the expiration of the primary lease term, Burger King failed to timely exercise its option. Hence, the 1965 lease was terminated.
Negotiations continued and a second lease was consummated on March 20, 1985, retroactive to the expiration date of the 1965 lease's primary term. The terms of this 1985 lease are essentially the same as the 1965 lease except for rent provisions, term and option periods, and it specifically provides the lessee is to pay taxes and provide liability insurance which are in the same amounts as the 1965 lease. The 1985 lease also included a provision that lessee obtain hazard insurance. In 1989, a third lease was executed which specifically superseded the 1985 lease. Again, the length of the lease and rent amounts were changed.
Mothe's position is that because Burger King did not timely institute arbitration proceedings the 1965 lease expired, terminating Gattuso's right to commissions. Gattuso maintains the arbitration provision does not specify which party was obligated to institute arbitration and that arbitration was waived by Burger King and Mothe pursuant to their active negotiations on a new rental rate.
We find Mothe's argument unpersuasive. The 1985 lease concerned the same parties, the same property to be used in the same manner, there was no interruption in occupancy, and the provisions of the 1985 lease were essentially identical to the 1965 lease. The major differences in the two leases concerned rent, which was left to negotiation by the 1965 lease, the lease term, and the fact that the lessee now pays taxes and hazard insurance. However, we note that the liability insurance limits in both the 1965 and 1985 leases were identical and to be paid by the lessee. Further, there was testimony that in 1965 taxes and insurance were typically paid by the lessor, whereas, in 1985 taxes and insurance were typically paid by the lessee.
*1220 Although we do not agree with the trial court that the 1985 lease was an extension or renewal of the 1965 lease, we find commissions are due through January 1995, the term of the 1965 lease. The 1965 lease term, including options, ran through January 1995. Burger King timely noticed Mothe of its intention to exercise its option. Because negotiations concerning rent, which was left open in the 1965 lease, broke down, the parties' negotiations resulted in a new lease being perfected. This 1985 lease differed from the 1965 lease in the rent due; the primary and option periods were changed; and taxes and hazard insurance would now be paid by the lessee. This is clearly a new lease. However, because Burger King timely noticed Mothe of its intent to exercise the renewal option, the parties cannot later execute a new lease and deprive the broker of his rightful commissions due. Thus, Mothe owes Gattuso commissions beginning February 1, 1985,[2] but not throughout the terms of the 1985 and 1989 leases.
The commission provision provided a commission due Gattuso "on any extension or renewal, if there be a privilege." We interpret this to mean commissions are due through the term of this lease, or thirty years, absent a commission in a subsequent lease. Because the 1985 lease was not a renewal or extension of the 1965 lease and did not provide for real estate commissions, no privilege existed in Gattuso's favor. Thus, no commissions are due Gattuso after expiration of the 1965 lease term (including option periods) i.e., through January 1995.
Accordingly, the decision of the trial court is affirmed in that it found Burger King timely exercised its option to renew the lease and that Mothe owes Gattuso commissions of $104.16 per month beginning February 1985. However, the commissions due are limited to the term of the 1965 lease, or through January 1995.
As to judicial interest, LSA-C.C. art. 2000 provides:
"When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by Article 2924. The obligee may recover these damages without having to prove any loss, and whatever loss he may have suffered he can recover no more. If the parties, by written contract, have expressly agreed that the obligor shall also be liable for the obligee's attorney fees in a fixed or determinable amount, the obligee is entitled to that amount as well."
Damages for delay in the performance of an obligation are owed from the time the obligor is put in default. LSA-C.C. art. 1989. When a term for the performance of an obligation is either fixed, or is clearly determinable from the circumstances, the obligor is put in default by the mere arrival of that term. LSA-C.C. art. 1990.
Because monthly commission payments were not paid upon the arrival of the term, each month, we find the trial court properly awarded interest on each commission payment from the date each payment was due. Alexander v. Burroughs Corp., 359 So.2d 607 (La.1978); Mini Togs Products Inc. v. Wallace, 513 So.2d 867 (La. App. 2nd Cir.1987), writ denied 515 So.2d 447, 451 (La.1987); EDAW, Inc. v. New Orleans East, Inc., 528 So.2d 168 (La.App. 4th Cir.1988), writ denied 530 So.2d 81 (La.1988). This is correct even though plaintiff did not specifically pray for such interest pursuant to LSA-C.C.P. art. 862, which provides that a final judgment shall grant the relief a party is entitled to, even if he has not demanded such relief in his pleadings. See Alexander, supra, footnote 6 at p. 614.
For the foregoing reasons, the judgment of the trial court is amended and, as amended, affirmed. Each party to bear their own costs.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] A third lease was entered into in 1989 which expressly rescinded the 1985 contract.
[2] The parties stipulated all commissions were paid through January 1985.