KLIEBERT, Chief Judge.
This matter is before us on an appeal taken by plaintiff, Oxford Management, Inc. (formerly known as Latter & Blum, Inc.), from a judgment of the lower court which denied its claim for unpaid commission monies alleged to be due under a rental listing and commission agreement of March 2, 1982 and a sublease entered into thereafter. For the reasons stated, we affirm the trial court.
The pertinent facts are as follows:
The defendant Langham Petroleum Corporation leased the thirteenth floor of One Lakeway, which contained 24,710 square feet, from Lakeway Companies in 1989. The plaintiff was paid commissions by Lakeway Companies on this lease.
In 1982 Langham, because of a business turndown, decided to close its office in New Orleans. While the preferable course of action would have been to then cancel the lease with Lakeway; as this was apparently not agreeable to the latter, it was decided to sublease to Molony, Nolan, North and Riess, a law firm.[1] With the plaintiff as *882 leasing agent, this was effected by the execution of a sublease agreement. (Oxford No. 2 dated March 3, 1982).
Oxford No. 2, is on a printed form, designated at the top: “Standard Form of Latter & Blum, Inc. Realtors.” The last paragraph on the front page thereof provided, in part, that in the event of mutual cancellation by sublessor and sublessee “without the written consent of Latter & Blum,” future commissions would be due the latter by Langham. This paragraph was, however, crossed out of the sublease and initialed by the parties. (Oxford No. 2, Tr. p. 255) A new paragraph was typed in which simply provided:
“For negotiating this sublease agreement, Latter & Blum is due a commission which shall be paid by Langham Petroleum Exploration Corp.”
There is no question but that the decision to remove the crossed out paragraph was a conscious decision of Latter & Blum. The typewritten paragraph just quoted above was the product of a vice-president of the company, Ms. Sheryl Rainold, who testified that she proposed the sublease and was responsible for the typewritten paragraph which was added to it.
Just prior to the execution of the sublease, by letter dated February 18, 1982, from plaintiff to Langham, on the subject matter of “Commission Agreement, Sublease of Langham Exploration Space Lake-way One,” it was provided that “5% of gross rents paid annually in advance upon move in of sublessee” was to be the commission due the plaintiff. However, an asterisk was placed above “5%” and the language following “5%” lined out. The latter was agreed to by Mr. Langham, as president, on March 2, 1982 over language written in following an asterisk at the bottom of the letter, as follows:
“of the first year’s rent paid in advance upon move in of sublessee and 5% of each years gross rent paid thereon on each subsequent anniversary of the sublease.” (Emphasis supplied)
The sublease continued from its inception through the year 1989, but in 1987 was cancelled with the approval of Lakeway Companies and simultaneously with the cancellation of the lease from Lakeway to Langham. (Oxford No. 4) No rent was paid to Langham after August 1, 1987.
At the time of the cancellation of the sublease, the law firm of Molony, Nolan,[2] North and Reiss was no longer operational. Thereafter, Mr. Nolan was gone from the building. Messrs. Molony, North and Reiss, as individuals, leased 13004.83 square feet directly from Lakeway. (Oxford No. 9) Molony and North leased 9,083.38 square feet from Lakeway (Oxford No. 7) and Mr. Reiss leased 2,617.31 square feet. (Oxford No. 8) The Oxford No. 7 lease continued until 1991 and the Oxford No. 8 lease to Reiss was cancelled on July 1, 1988.
There is no question but that some $99,-000 was paid in commissions to the plaintiff during the existence of the sublease; nor is there any question that the sum prayed for, i.e., $81,303.57 would be the amount of commission monies due if plaintiff’s version of the commissions due was to prevail.
In denying recovery, the trial judge ruled from the bench, observing in part as follows:
“Oxford’s case is based on the obligation of Langham Petroleum Corporation to pay commissions. Oxford points out that in a sub-lease between Langham and Maloney, Nolan, North and Reiss, the following is clearly in the agreement; that Latter and Blum is due a commission which shall be paid by Langham Petroleum Exploration Corporation. The issue in this case is what were the obligations of Langham Petroleum under this sub-lease and under Exhibit Oxford 3 which is a letter signed by John Kush-ner representing Latter and Blum direct *883 ed toward and signed by Mr. Langham, the president of Langham Petroleum. As I read these documents, as I construe them, Langham is obligated to pay a commission and Langham’s obligation actually rests on the interpretation given to the letter agreement of February 18th, 1982. In the sub-lease the parties struck the applicable provisions dealing with commissions and also the applicable provisions dealing with what would happen if this sub-lease were cancelled without the consent of Latter and Blum. Oxford’s only right to a commission is contained in this letter of February 18th and it says should the office building division of Latter and Blum procure a sub-lessee for the lease as described above, Latter and Blum will receive the commission of five percent. The latter part of that sentence is stricken. The latter part of the sentence saying five percent of gross rents paid annually in advance upon move in of the lessee, of the sub-lessee. I considered the testimony of Mr. Lang-ham who testified here this morning. He impresses me as a shrewd businessman. Mr. Langham was concerned about this verbiage in the letter agreement. He was not going to obligate his company to pay five percent of gross rents annually in advance. He knew what he was doing when he struck that from the agreement. Mr. Kushner knew what he was doing when he agreed to it. As had been said today, signatures on agreements are not mere ornaments. Kushner and Lang-ham are both businessmen who knew what they were doing. The letter agreement is modified to say that the agreement is five percent of the first year’s rent paid in advance and five percent of each year’s gross rent paid. I read this to mean that Oxford’s entitled to these commission as they are paid. In other words, I read them to read this, Oxford 3 and Oxford 2 together, to mean that as Langham collects the rent, he owes five percent commission. And again, I reiterate the fact that Langham was not going to agree to paying rent in advance before he collected it and that’s why he struck it from the agreement. Oxford argues that there’s no waiver of their commission agreement. On the other hand, Oxford who has the burden of proof presents me with nothing to carry that burden in my view. In have to determine the intent of these parties when they executed these agreements. I believe it’s more likely true than not true that the agreement was as I have stated. For five years the law firm leased the property and paid the rent and Langham under his obligation paid the commissions. Thereafter the law firm had some difficulties, not the least of which was keeping their space filled and sought to cancel their agreement with Langham. They did so. They, in my view, acted in good faith. I cannot find any evidence to indicate that the law firm acted in bad faith. So I cannot say there was any concerted effort here on the part of this law firm to somehow escape any obligation to pay any commissions. For the reasons I’ve stated, I do not find that there’s any commissions owed in this case and I render judgment in favor of these defendants dismissing the claim of Oxford Management at their cost.”
The appellant argues before this Court that the trial court erred by allowing the defendants to escape their commission obligation by means of the sublease cancellation “even though the sublessees remained on the premises and continued to pay rent beyond the date that the sublease was can-celled” urging further that Langham was only a conduit. There are factual inaccuracies in this assertion as follows:
The property was not immediately released and occupied by the sublessee. As pointed out above, the original sublessee law firm disbanded and only certain individuals remained on the premises and then only on a portion of that which was originally sublet. Nor was Langham ever a conduit. This organization had occupied the premises for some time before it reduced its operations and, not being able to cancel its lease obligations, sublet and then moved to Houston.
While appellant does not make exactly clear to the Court the theory under which it *884 is entitled to recover, certain jurisprudence is cited in support of its position which merits discussion.
The case upon which appellant relies most heavily is that of Onorato v. Maestri, 173 La. 375, 137 So. 67 (1931). There, an owner took the opportunity created by the filing of bankruptcy proceedings by the tenant to effect the rescission of the lease by filing suit, and then relet the same space to the trustee with the result that the payment of the real estate agent's commission was lost. The differences between that case and the facts here presented are readily apparent. There, Onorato, the owner (lessor), remained in exactly the same position. Here, the sublessor, Langham, has been completely removed. There, the exact same premises were covered by both the original and subsequent agreements. Here, only a portion of the original premises is covered by the new lease agreements. There, the original business continued to be run by the trustee. Here, the law firm was dissolved with one partner leaving and the others taking only portions of the premises originally occupied.
Also cited by appellant is Gattuso v. Mothe, 576 So.2d 1217 (5th Cir.1991). The issue presented to the lower court there was whether a “1985 lease was a renewal and/or extension of the 1965 lease, thus mandating a finding that commissions are due Gattuso, or whether the 1985 lease is a new contract mandating a dismissal of Gat-tuso’s claims.” This Court did not agree with the trial judge finding that the 1985 lease was a renewal or extension of the 1965 lease, but was rather a new lease. Under the facts presented, however, the court simply held that where timely notice of intent to exercise an option to renew had been given, the parties could not later execute a new lease and deprive the broker of his rightful commission due, but only under the original lease and options therein granted. The facts are not opposite to those presented here.
The appellant obviously would like to read into the pertinent agreements the very provisions that would have entitled it to commissions for the entire term of the sublease on rent whether paid or not, but which provisions were eliminated by the parties themselves. There is simply no provision in the pertinent documents which allow appellant relief. The findings and conclusion of the lower court are correct and, therefore, affirmed.
AFFIRMED.

. While the record never makes exactly clear the exact legal status of the law firm, its mem *882 bers were Lawrence J. Molony, Bruce A. North, and F. Kelleher Riess. These parties signed the pertinent instrument under the designation of "sublessee" and were named as parties defendant along with Langham.

. This gentleman, while named as a member of the law firm, was not made a party defendant.