BYRNES, Judge.
The plaintiff-appellant, Linda Begue, a licensed real estate broker doing business as French Quarter Realty, acted as a broker for a contract of lease between the defendant-appellee, Jules Cahn, lessor, and Robert E. Nims, lessee, for commercial property located at 727-729 Bourbon Street. Mr. Nims is not a party to these proceedings. The ninety-six (96) month lease, whose term extended from January 1, 1988 through December 31, 1995, provided for a monthly rental of $1800 and entitled appellant to collect a real estate commission of six (6) percent of the “total rental ... of this lease ... and a similar commission on any extensions or renewals.”
The lease agreement was executed on April 20, 1988. Ms. Begue collected rental payments each month, withheld her commission and forwarded the remaining balance to the lessor. In September, 1991, the lessor, Jules Cahn, sold the property. Ms. Begue then demanded full payment of all commissions still due through the end of the lease term. She sued Mr. Cahn contending that the commissions were due and payable in a lump sum at the time the lease was signed and that she had allowed Mr. Cahn to pay the commissions monthly only as a courtesy.
Mr. Cahn filed a dilatory exception of prematurity asserting that the buyer of the property assumed the obligation to continue paying the monthly commissions and unless and until those payments stop, there is no existing debt which can be the basis of a lawsuit by Mrs. Begue. The lower court sustained the exception. Mrs. Begue appealed. We affirm.
The lease is a pre-printed Form CLN No. 1, revised March, 1971 “Standard Form Real Estate Board of New Orleans, Inc.— Lease of Commercial Property (Net)”.
The commission language in dispute commences at line 167 of the lease:
“Lessor, its heirs, successors or assigns, agrees to pay French Quarter Realty agent, its heirs, successors or assigns a cash commission of 6% on the total rental (Minimum guaranteed rental as well as additional sales percentage rental, if any) of this lease up to $200,000 and a similar commission on any extension or renewal.” [Emphasis added].
We find that this provision means that Ms. Begue is only entitled to a commission on rents as received.
The lease is for eight years, but it is a standard form lease intended for general usage. It could just as easily have been for twenty or thirty years in which case the landlord would have to pay commissions up front in an amount equal to one, two, or more years’ rent without yet having received any rent to fund such a large cash outlay, with no guarantee that the lessee would faithfully make all payments required under the lease for the term of the lease. This would not be workable in normal market-place conditions, especially where the tenant is not a national entity.
It is reasonable to assume that language explaining this is not in the lease because it is the well known and customary practice in the industry. Wanless v. Smith, 248 So.2d 343, 345 (La.App. 4 Cir.1971), writ refused, 259 La. 757, 252 So.2d 455 (1971).
Ms. Begue procured a responsible tenant. But an unscrupulous agents would sign up tenants with no ability or no intention of paying, if such agents could collect the full commission up front.
*963 The lease provision itself makes this clear. It refers to an “additional sales percentage rental if any” as part of the total rental. There is no percentage rental in the instant case, but the fact that the pre-printed form provided for that possibility establishes conclusively that the form intended commissions to be earned only on rents collected. It is impossible to calculate a sales percentage rental until one knows what one’s sales are.
In Wanless, supra the plaintiff sued for commissions pursuant to language which is identical to the language that forms the basis of Ms. Begue’s claim in the instant case. The plaintiff claimed commissions for the entire balance of the forty year term when the lease terminated after only eight years. As in the instant case, the defendant had historically remitted commissions on a monthly basis. Relying largely on logic and common sense, the court denied the claim for commissions in Wanless:
There was expert testimony adduced at trial to support a finding that this procedure [paying commissions as rent is collected] is the custom in the real estate business.
Again, as was previously stated, the lease was terminated on April 30, 1968 by Bonura for failure of the lessee to honor the terms of the lease. This was done by Order of the Court.
We are of the opinion that once the lease was terminated there was nothing on which Wanless could base his commission; the “total rental of the lease” was the amount collected to the point of termination of-the lease. To say that Wan-less may recover for commissions never earned and never to be earned is completely untenable. Had Wanless been paid the entire commission at the outset of the lease, could he now argue that he is entitled to keep all the commissions? Hardly.
The term of the lease was originally 40 years. The lease lasted for only eight years. Wanless is entitled to commissions only for the length of time that the lease was in existence. The “total rental of the lease” has already been realized and the amount due to Wanless is to be calculated as a percentage of the amount of rentals the lessor and/or his assignee collected under the lease.
Wanless, 248 So.2d at 345, 346.
Similarly, in the recent case of Gattuso v. Mothe Life Ins. Co., 576 So.2d 1217, 1219 (La.App. 5 Cir.1991) writ denied, 580 So.2d 381 (La.1991), the court referred to “monthly commission payments” although the lease paragraph providing for the commission did not state that the commission could be paid on a monthly basis.
Ms. Begue argues that Mr. Cahn “failed to support his demand with sufficient evidence ...”. Ms. Begue incorporated the entire lease into her petition. As discussed above the lease on its face is sufficient to support Mr. Cahn’s exception. Moreover, Ms. Begue admits that for over three and one-half years she collected the rentals and deducted the commission on a monthly basis. This is evidence in itself that the parties intended monthly remittances.
Ms. Begue asserts that Mr. Cahn adduced no evidence whatsoever regarding the defendant and his assignee’s (the new owner) right to pay any remaining commissions on a monthly basis. There is no merit to this. In the body of her exception Ms. Begue quoted the lease provision that allows the new owner to assume the obligation to pay commissions to Ms. Begue. The commissions continue to be paid. These two facts together are sufficient to prove Mr. Cahn’s case on this issue.
The trial court noted, that there was no provision in the lease entitling Ms. Begue to accelerate the commissions when the property was sold, or for any other reason. But Ms. Begue asserts that if we do not reverse the judgment of the trial court she will have to file a new suit every month to collect her commission, a burden so onerous as to constitute irreparable injury.
That Ms. Begue might have to go to court to enforce her claims does not, as a matter of law, constitute irreparable injury. Updegraff v. Parish of St. Bernard, 433 So.2d 863, 865 (La.App. 4 Cir.1983).
*964 Ms. Begue assumes that she will never again be paid her monthly commission voluntarily. There is nothing in the record to support this assumption. If commissions are not paid when due Ms. Begue will be entitled to interest to compensate her for the delay:
When a term for the performance of an obligation is either fixed, or is clearly determinable from the circumstances, the obligor is put in default by the mere arrival of that term. LSA-C.C. art. 1990. Because monthly commission payments were not paid upon the arrival of the term, each month, we find the trial court properly awarded interest on each commission payment from the date each payment was due. Gattuso v. Mothe Life Ins. Co., 576 So.2d 1217, 1220 (La.App. 5 Cir.1991).
For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.