680 So.2d 52 (1996)
Michael Leroy MILLER and Donald Leroy Miller
v.
LOUISIANA GAS SERVICE COMPANY and Louisiana Power & Light Company.
No. 95-CA-874.
Court of Appeal of Louisiana, Fifth Circuit.
June 25, 1996.
Rehearing Denied October 17, 1996.
*53 W. Malcolm Stevenson, Slater Law Firm, New Orleans, for defendants-appellants.
G. Bruce Parkerson, Phelps Dunbar, New Orleans, H. Alston Johnson, III, Baton Rouge, for defendants-appellants-appellees.
Before BOWES, GRISBAUM and WICKER, JJ.
GRISBAUM, Judge.
This appeal arises out of a personal injury action wherein Louisiana Power and Light Company ("LP & L"), cross-claim plaintiff, *54 seeks contractual indemnification from Louisiana Gas Service Company ("LGS"), cross-claim defendant, for the full amount it paid to the original plaintiffs, Michael and Donald Miller. We affirm, amend and remand.

ISSUES
We are called upon to determine two specific questions:
(1) Whether the trial court erred in finding LGS should indemnify LP & L for 50 percent of the original plaintiffs' total award, and
(2) Whether the trial court erred in failing to award LP & L interest on its indemnification award against LGS.

BASIC RECORD FACTS AND PROCEDURAL HISTORY
On November 4, 1983, suit was filed by Michael Leroy Miller and Donald Leroy Miller against LGS and United Gas Pipeline Company ("United") seeking damages for injuries sustained by plaintiffs in an accident which occurred on or about June 22, 1983 while plaintiffs were working for Lloyd D. Joiner Construction Company ("Joiner"). The accident occurred while the plaintiffs were working underground on a gas pipeline for LGS. The plaintiffs were working with a torch, which ignited escaping gas causing injuries to the plaintiffs.
On September 8, 1984, plaintiffs filed a Supplemental and Amending Petition naming LP & L as an additional defendant alleging that, in 1954 or 1955, LP & L, then the owner of the gas distribution system subsequently sold to LGS, constructed a gas main which was tied into a gas line owned by United. It was alleged that this gas line was the source of the gas which ignited and burned the plaintiffs. LP & L and LGS filed cross-claims against one another based on indemnification agreements contained in the Act of Sale which transferred LP & L's gas distribution system to LGS in 1958.
The cross-claims were severed, and plaintiffs' case was tried in May of 1991. On July 17, 1991, the trial court granted judgment in favor of the plaintiffs and against LP & L. The court found both LP & L and LGS to be negligent but only cast LP & L in judgment as LGS was found to be an immune statutory employer. The court awarded plaintiff Michael Leroy Miller the sum of $900,000 and awarded plaintiff Donald Leroy Miller the sum of $7,963.70.
On August 15, 1991, LP & L took a suspensive appeal. We affirmed the judgment in favor of the plaintiffs against LP & L. Subsequently, the Louisiana Supreme Court refused LP & L's application for Writs of Certiorari or Review.
The cross-claims of LP & L and LGS were set for trial on February 2, 1993. Prior to the trial date, both LGS and LP & L filed Motions for Summary Judgment. On August 20, 1993, the trial court granted summary judgment in favor of LGS and against LP & L. The court further denied LP & L's motion for summary judgment. On appeal, this Court found an issue of material fact did indeed exist. Accordingly, it reversed the judgment of the trial court, remanding the case for further proceedings. See Miller v. La. Gas Serv. Co., 93-1011 (La.App. 5th Cir. 5/31/94), 638 So.2d 458.
On May 16, 1995, the case was submitted to the trial court based on a stipulation of facts and the entire record of the matter. On July 6, 1995, the trial court rendered judgment in favor of LP & L and against LGS "for fifty percent of the plaintiff's total award...." It is from this judgment both parties appeal.

ISSUE ONELAW AND ANALYSIS
The record shows the 1958 Act of Sale transferring the gas distribution system from LP & L to LGS contains an indemnity agreement, which provides:
Paragraph 15, in pertinent part, states: "Except as otherwise specifically provided in this Agreement: La. Power shall indemnify, save and hold harmless La. Gas against and from any and all liability, claims, demands, damages, actions, causes of action, costs and expenses arising out of the operation of the said Gas System and Water System prior to the close of business on the date hereof, even if caused by or resulting from acts or omissions of officers, employees or agents of La. Gas; and La. Gas shall indemnify, save and hold harmless La. Power against and from any *55 and all liability, claims, demands, damages, actions, causes of action, costs and expenses arising out of the operation of the said Gas System and Water System subsequent to the close of business on the date hereof even if caused by or resulting from acts or omissions of officers, employees or agents of La. Power."
LP & L contends that, under the agreement, LGS should indemnify it for the full amount of the award to the original plaintiffs. Conversely, LGS argues it is not liable for any of the amounts, since it is immune as a statutory employer and the indemnity agreement is not sufficient to allow LP & L to be indemnified for its own negligence.
We are guided by our jurisprudence, which tells us that, while it is true as a statutory employer LGS is immune from suit by third parties, there is nothing to prevent the third party and the employer from agreeing that the employer will hold the third person harmless. See Berninger v. Ga-Pac. Corp., 582 So.2d 266 (La.App. 1st Cir.1991). Here, there is such an agreement between the third party, LP & L, and the employer, LGS.
We must now turn to examine the validity of the contractual indemnity agreement between LP & L and LGS. Again, our jurisprudence tells us that indemnity agreements in which the indemnitee is indemnified against the consequences of his own negligence must be strictly construed and such agreements will not be held to indemnify an indemnitee against losses resulting to him through his own negligent act, unless such an intention was expressed in unequivocal terms. See Polozola v. Garlock, Inc., 343 So.2d 1000 (La.1977).
This Court has previously found an agreement, which provided indemnification for "`all claims, demands, and causes of actions... of every kind and character,'" to unequivocally express the intent to provide indemnification for all types of negligence, including the indemnitee's sole negligence. Harris v. Agrico Chem. Co., 570 So.2d 474, 477 (La.App. 5th Cir.1990). From the record before us, we find the agreement in question clearly states that LGS must indemnify LP & L, even if the acts are caused by LP & L. No one could question that this agreement was entered into by two very sophisticated corporations, both of whom retain a whole battery of attorneys from which to seek counsel when necessary. Thus, we cannot say the trial court was manifestly erroneous in finding the indemnity agreement between the parties to be valid.
We now turn to determine whether the trial court erred in its measure of quantum owed by LGS to LP & L. We see the original judgment of July 17, 1991 found both parties to be at fault but only cast LP & L in judgment due to the fact that LGS was immune as a statutory employer. In the trial court's Reasons for Judgment, it stated that several LP & L documents were incomplete and in error at the time of the sale. Additionally, the court found many of the documents later drawn by LGS were also incomplete and erroneous. Since LP & L's negligence occurred prior to the sale and LGS' negligence occurred subsequent to the sale, the indemnity agreement provides that each party owes the other indemnification.
Apparently, in order to break the circularity of these reciprocal indemnification agreements, the trial court ordered each party to be responsible for 50 percent of the plaintiff's original award. We note the trial court did, however, erroneously use the term "comparative negligence" in describing this result. This is not a situation of comparative fault; rather, it is a case of two parties, both at fault, with reciprocal indemnification agreements. Fortunately, this error is harmless. In the final analysis, the "50 percent" solution, we find, is a logical and common sense solution to this unique dilemma. Accordingly, we cannot say the trial court erred.
However, there does seem to be some confusion as to what the trial court intended by casting "each defendant in judgment for fifty percent of the plaintiffs' total award...." That is, whether the court meant 50 percent of the principal amounts awarded to plaintiffs, $900,000 and $7,963.70, or 50 percent of the total amount actually paid to plaintiffs by LP & L, including principal and interest, $1,713,370.68 and $14,618.78. *56 This Court believes a proper reading of the trial court's judgment is it intended each party to be responsible for 50 percent of the actual amount, $1,727,989.46, received by plaintiff. Thus, LGS owes indemnification to LP & L in the amount of $863,994.73 [1,713,370.68 + 14,618.78 = (1,727,989.46) × .5 = $863,994.73].

ISSUE TWO & LAW AND ANALYSIS
Next, we must consider whether the trial court erred in failing to award LP & L interest on its indemnity award from LGS. LP & L claims it is due interest from the date of judicial demand, which is the time of the filing of the original cross-claim, and that the trial court's failure to award interest was simply an oversight. LGS contends that, since the trial court's original award of "fifty percent of the plaintiffs' total award" included interest, then to award LP & L interest in its indemnity action would be an impermissible award of interest on interest. LGS also argues LP & L is not due interest because LP & L failed to pray for interest in its pleadings.
While it is true LP & L did not pray for interest, a judgment may and should include an award of legal interest when a party is entitled to such, even if such relief is not demanded in the pleadings. La.Code Civ.P. art. 862; Gattuso v. Mothe Life Ins. Co., 576 So.2d 1217 (La.App. 5th Cir.1991). Legal interest is due on all sums which are the object of a judicial demand. La.Civ.Code art. 2924; McConathy v. McConathy, CA-25542 (La.App.2d Cir. 2/23/94), 632 So.2d 1200. Therefore, we find an award of legal interest to be appropriate.
Although interest is due, we must determine the proper amount of interest to be awarded. Generally, interest in ex contractu matters is due from the date of judicial demand. Knecht v. Bd. of Trustees for State Colleges, 591 So.2d 690 (La.1991). However, an indemnity agreement is a specialized form of a contract, wherein the indemnitor is not liable until the indemnitee actually makes payment or sustains a loss. Meloy v. Conoco, Inc., 504 So.2d 833 (La. 1987).
Here, LP & L actually made payment of $1,727,989.46 to the original plaintiffs on October 6, 1992. It is on this date LP & L became aggrieved for the interest on that portion of money owed to it by LGS. Thus, LGS owes LP & L legal interest on $863,994.73 from October 6, 1992 until the amount is paid. Accordingly, we remand this matter for a determination of the exact amount of interest to be paid by LGS.
This is not an impermissible award of interest on interest. The $863,994.73 award is indemnification for that portion of the original judgment which LGS owes to LP & L. While the amount of the original judgment does include interest, it is the interest due to the original plaintiffs as part of the original judgment. In this suit LGS is not being ordered to pay interest on the original judgment; rather, it is being ordered to pay interest on the amount it owes to LP & L through indemnification.
We find LGS owes indemnification to LP & L in the amount of $863,994.73, plus interest from October 6, 1992, until paid.
For the reasons assigned, the trial court's judgment is hereby affirmed, amended, and remanded in accordance with the rationale set forth herein. Each party to this appeal is to bear its respective costs.
AFFIRMED, AMENDED AND REMANDED.