LAMY, Judge.
The plaintiff bank filed a security agreement noticing third parties that it held a security interest in a corn crop. The defendant grain cooperative sold the crop to a third party and, from the proceeds, paid a harvester and hauler. The plaintiff filed suit asserting the defendant had converted these funds as the bank had filed a security agreement and the harvester and hauler had not filed notice of any privilege. The defendant maintained that there is no filing requirement for the privileges due to necessity and custom. The lower court found in favor of the defendant. The bank appeals. We reverse.
Factual and Procedural Background
The plaintiff, Deposit Guaranty National Bank (Bank), held a security interest, by way of a security agreement, in the 1996 corn crop of Laura Clement. This security interest included all products and proceeds of the crop. Furthermore, the | ¡¡bank recorded the requisite UCC-1F Effective Financing Statement with the West Carroll Parish Clerk of Court.
According to the stipulated facts submitted to the lower court in this matter, the defendant, Central Louisiana Grain CoOp, Inc., stored and sold the secured corn crop. The instant matter arose when the defendant remitted the crop proceeds to the bank absent the harvest and hauling expenses paid to the individuals performing these functions. The parties’ stipulated facts indicate that paying the expenses for harvesting, freight, or hauling *169 from the proceeds of the crop was their customary practice in years past.
The plaintiff filed suit in September 1997, asserting that the defendant converted the harvesting/hauling funds as the bank’s perfected security interest had been recorded, but any privileges of the harvester/hauler had not been filed. The matter was submitted to the lower court on stipulated facts in a jointly filed pretrial statement. The statement was accompanied by memoranda from the parties. The lower court found in favor of the defendant concluding that any privilege of the hauler in this matter did not have to be filed in order to rank in priority above the perfected security interest of the bank.
The bank appeals assigning the following issues for review:
1. Is the appellant court bound by the findings of fact of the trial court?
2. Does Louisiana law require a thresherman/combineman to file an Effective Financing Statement as per La.R.S. 9:4521 and [La.]R.S. 3:3651 et seq. to perfect his lien in farm products to be given priority over a prior perfected security interest?
|a3. Does Louisiana law recognize a “hauler’s privilege” for the payment of services of transporting the crops from the fields to the grain elevator and if so, is an Effective Financing Statement required to be filed as per La.R.S. 9:4521 and [La.]R.S. 3:3651 et seq., to perfect the same and to give said privilege a priority ranking over a prior perfected security interest in farm products?
4. Did the actions of defendant in paying the harvester and transporter/hauler of the corn crop in preference to the bank’s security interest constitute conversion?
Discussion
Findings of Fact
In its first assigned issue for review, the bank argues that the lower court’s reasons demonstrate that the court found that the defendant, itself, harvested and transported the crops to its facilities thereby ranking the defendant as a privilege holder with priority. Contrary to this holding, the stipulated facts submitted to the lower court clearly indicate that the defendant stored and sold the crop and then paid the harvesting and hauling expenses to others.
Our review of the lower court’s findings reveal no errors of fact requiring correction. As asserted by the bank, the stipulated facts, submitted by the parties jointly, clearly indicate that the defendant stored and sold the crop and then remitted harvest, hauling, and freight expenses to others. In the recitation of facts found in the lower court’s reasons for judgment, the court states that the defendant “did disburse sums totaling $27,357.00 without consent or authorization of the plaintiff.” Furthermore, the lower court found that “the funds were rightly disbursed as payment for services rendered which does not constitute conversion on the part of the defendant.” In order to disburse, as found by the lower court, the defendant would Robviously had to have had an outside party to whom the funds could be disbursed. Therefore, it is obvious the lower court recognized that the individual haulers and harvesters had been paid by the defendant. We find no meaningful error in the lower court’s statement in summation wherein the court finds that “Defendant, Central La.Grain CO-OP falls within the ranks of those having first priority. Therefore, they are entitled to be paid first.” Rather, it is obvious from a reading of the full text of the court’s reasons that it is the privileges of the hauler and the harvester that are at issue.
We find this assignment to be without merit.
Filing of Financing Statement for Thresherman/Combineman
The bank argues that although Roger Clement, the harvester to whom funds were paid, did have a privilege in the corn *170 crop proceeds, notice of the privilege was never filed with the Secretary of State through the local Clerk of Court. The bank contends La.R.S. 9:4521 clearly indicates that in order for a harvester’s privilege to rank above the perfected security interest of the bank, notice of the privilege must have been properly filed. As no notice was filed in this matter, the bank argues that its own perfected security interest should have received priority over the harvester’s privilege of Roger Clement.
The privilege of the harvester is created by virtue of La.R.S. 9:4523 which provides that “[t]hreshermen, combinemen and grain driers have a privilege for services rendered on the crop which they have threshed, combined or dried.”
Essentially at issue in this assignment is the meaning of La.R.S. 9:4521 which ranks the priority of several specific privileges, including that of the harvester. La.R.S. 9:4521 provides as follows:
[bAs a specific exception to R.S. 9:4770 and R.S. 10:9-201, the following statutory privileges and perfected security interests as affecting unharvested crops shall be ranked in the following order of preference, provided that such privileges and security interests have been properly filed and maintained in accordance with the central registry provisions of R.S. 3:3651[1] et seq.:
(1) Privilege of the laborer, the thresherman, combineman, grain drier, and the overseer.
(2) Privilege of the lessor.
(3) Perfected security interests under Chapter 9 of the Louisiana Commercial Laws in the order of filing, as provided by R.S. 3:3651 et seq.
(4) Privilege of the furnisher of supplies and of money, of the furnisher of water, and of the physician.
Thus, the privilege of the harvester is given priority over a perfected security interest.
|fiThe bank asserts that the priority given to the harvester’s privilege over the bank’s perfected security interest is, according to the wording of the statute, effective only if the notice of the privilege “has been properly filed and maintained in accordance with the central registry provisions .... ” The defendant contends that La.R.S. 9:4523, which creates the harvester’s privilege, does not require that the privilege/lien be perfected. Rather, according to the defendant, such a reading of the statute is impractical and contrary to common practice.
In reasons for judgment, the lower court framed the issues before the court as follows:
The issues before this court are: (1) whether or not it is required or even realistic to expect a hauler of crops and one involved in the harvesting of crops to file a perfected security interest on each agricultural product that they haul; (2) whether the funds in dispute were improperly disbursed by the defendant *171 constituting a conversion on the part of the defendant.
In resolving these issues, the lower court first related the ranking of priorities found in La.R.S. 9:4521 and then found, in part:
In the normal course of business a hauler[2] is presumed to have a vested interest in the crops he hauls. Therefore, it does not appear practical nor is it customary for a hauler to place others on notice each and every time he transports a particular crop. It is the opinion of this court that the law does not intend to place such restraints upon regular commercial trading practices.
We agree with both the defendant and the lower court that requiring a harvester to file notice of the La.R.S. 9:4523 privilege appears contrary to both custom and ^^conventional wisdom. Any perfected security interest in a crop, which is held by a bank, is worthless if the crop which it secures is not harvested. The crop, of course, will not be harvested if the harvester’s payment is not assured. However, the law appears clear and such policy considerations are the province of the legislature. As urged by the defendant, La. R.S. 9:4523 does not indicate that notice of the harvester’s privilege must be given. But, La.R.S. 9:4521 provides otherwise. The statute dearly states that the ranking of priorities, which places the “thresher-man, combineman” above the holder of a perfected security interest, is applicable “provided that such 'privileges and security interests have been properly filed and maintained ....” (Emphasis added.) The privilege of Roger Clement, the harvester, was not filed.
Furthermore, in Howard v. Stokes, 607 So.2d 868 (La.App. 2 Cir.1992), the second circuit reversed a judgment wherein a trial court ranked the privileges at issue as follows: 1) combineman’s privilege, 2) lessor’s privilege, 3) recorded crop pledge. The second circuit stated as follows with regard to the trial court’s findings:
In ranking the lessor’s privilege and the combineman’s privilege ahead of the recorded crop pledge, the trial court concluded that only a secured lender like Terrick, Inc., who had his security interest created in a written instrument, needed to file with the central registry in order to have his security interest ranked in the order of preference set forth in R.S. 9:4521. Because the law does not require the combineman’s privilege or the lessor’s privilege to be created in a written document, the trial court ranked these privileges ahead of the recorded crop pledge.
In so holding, the trial court overlooked pertinent provisions of Act 548 of 1989, effective August 22, 1989, prior to the 1990 crop year, which amended both the provisions of R.S. 3:3651, et seq. and R.S. 9:4521. Act 548 amended R.S. 3:3652(14) to define “security device” as a written instrument that established a creditor’s security interest in farm products, or, any pledge or privilege described in R.S. 9:4521, whether or not evidenced by a written instrument. This change in the law made clear the legislature’s intent for the term “security device” to |sinclude not only a written crop pledge established pursuant to the provisions of R.S. 9:4341, but also [1] the privilege of the combineman and the privilege of the lessor, both of which are set forth in the provisions of R.S. 9:4521. Act 548 also added to R.S. 9:4521 the provisions concerning notice properly filed in accordance with R.S. 3:3651, et seq.
Further, Act 548 amended the provisions of R.S. 3:3656 to provide that the central registry would only accept and record written security devices accompanied by a related effective financing statement, and effective financing state *172 ments alone for unwritten security devices described in R.S. 9:^521. The changes to R.S. 3:3656 provided that only security interests as to which financing statements and written security devices were filed would be effective against third parties.
The definition of “security device” in effect at all pertinent times in this case included all three security interests at issue. Therefore, the trial court erred in reading the provisions of R.S. 9:4521 as applying only to the crop pledge. Because all three security interests were subject to the provisions of R.S. 9:4521 and R.S. 3:3651, et seq., but only the crop pledge was recorded, only the pledge was effective against third parties and should be ranked first.
Id. at 870.
We find the instant matter analogous. As only the bank’s perfected security interest was recorded, it should have received priority in accordance with the rankings of La.R.S. 9:4521. We conclude that, under the facts presented here, the lower court erred in finding any privilege of the harvester ranked above the bank’s security interest.
Hauler’s Privilege
In this assignment of error, the bank argues that the lower court erred in finding the existence of a hauler’s privilege. The bank maintains that no privilege is recognized in Louisiana law for the payment of services related to the transport of a crop from the field to the grain elevator. Furthermore, even if such a privilege exists [ 9argues the bank, the privilege must be recorded in order to receive priority over a perfected security interest according to La.R.S. 9:4521.
In the reasons for judgment, the lower court found as follows: “This court believes that the law did intend for a hauler to receive privileges in crops he hauls which would insure that he is paid with preference for his services.” Although no statutory authority for such a privilege was provided by the lower court, the obvious wisdom of the lower court’s finding is illustrated in the conclusion that crops which are not hauled from the field are worthless. However, again, we are bound to apply the legislature’s decision regarding the ranking of privileges.
Even if we were to find that a hauler’s privilege has been specifically provided by statute, which we do not, this argument has been rendered moot by our above conclusion that any privilege enjoying priority over a perfected security interest must be filed per La.R.S. 9:4521. Therefore, we do not address this issue.
Conversion
In its final argument, the bank contends that the defendant’s payment of expenses to the harvester and hauler were acts of conversion. In its brief, the bank argues that “[i]t has been stipulated that the 1996 corn crop was encumbered by a security interest in favor of [the bank], and ... when the defendant failed to remit all of the sale proceeds therefrom and paid the same to third parties without knowledge nor consent of Appellant, such act amounted to a conversion of those proceeds.”
In Labbe v. Premier Bank, 618 So.2d 45, 46 (La.App. 3 Cir.1993), a panel of this court stated as follows with regard to the tortious act of conversion:
|inA conversion consists of an act in derogation of the plaintiffs possessory rights, and any wrongful exercise or assumption of authority over another’s goods, depriving him of the possession, permanently or for an indefinite time, is a conversion. Issues of fault, intent, negligence, knowledge or ignorance, and/or good faith are not involved in actions for tortious conversion. Hagberg v. Manuel, 525 So.2d 19 (La.App. 3d Cir.1988). A mistake of law or fact is no defense. Persons deal with the property in chattels or exercise acts of ownership over them at their peril, and must take the risk that there is no lawful *173 justification for their acts. Prosser & Keeton, 5th ed. § 15 at 93.
We conclude that the facts of the instant matter fit within the above-quoted description. Therefore, we reverse the judgment of the lower court.
Finally, we note that the bank did not pray for interest in the petition instituting this matter. However, La.Code Civ.P. art.1921 instructs that a “court shall award interest in the judgment as prayed for or as provided by law.” Reference to La.R.S. 13:4203 provides that “[ljegal interest shall attach from date of judicial demand, on all judgments, sounding in damages, ‘ex delicto’, which may be rendered by any of the courts.” Additionally, La.Code Civ.P. art. 862 provides that “[ejxeept as provided in Article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief.” Thus, we conclude that, even in light of the bank’s failure to pray for interest, legal interest is owed from the date of judicial demand in this action for conversion. See Miller v. Louisiana Gas Serv., Co., 95-874 (La.App. 5 Cir. 6/25/96); 680 So.2d 52, writ denied, 96-2792 (La.1/6/97); 685 So.2d 119; Dufrene v. Duncan, 93-0403 (La.App. 1 Cir. 3/11/94); 634 So.2d 19; Webber v. Berry, 609 So.2d 1175 (La.App. 2 Cir.1992).
| ^DECREE
For the foregoing reasons, the judgment of the lower court is reversed and recast. as follows:
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of DEPOSIT GUARANTY NATIONAL BANK and against CENTRAL LOUISIANA GRAIN CO-OP, INC. in the sum of TWENTY-SEVEN THOUSAND TWO HUNDRED FIFTY-SEVEN and °Hoo ($27,257.04) DOLLARS, together with legal interest from the date of judicial demand, until paid.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all costs of trial and this appeal are assessed to CENTRAL LOUISIANA GRAIN CO-OP, INC.
REVERSED AND RENDERED.

. La.R.S. 3:3651 provides the following as "Legislative findings and intent’’:
The legislature hereby finds and declares that:
(1)Certain state laws permit a secured lender to enforce liens against a purchaser of farm products even if the purchaser does not know that the sale of the products violates the lender’s security interest in the products, lacks any practical method for discovering the existence of the security interest, and has no reasonable means to ensure that the seller uses the sales proceeds to repay the lender.
(2) These laws subject the purchaser of farm products to double payment for the products, once at the time of purchase, and again when the seller fails to repay the lender.
(3) The exposure of purchasers of farm products to double payment inhibits free competition in the market for farm products.
(4) This exposure constitutes a burden on and an obstruction to commerce in Louisiana farm products.
(5) The purpose of this legislation is to remove the burdens on and obstructions to commerce in Louisiana farm products.

. Throughout the reasons for judgment, the lower court referred to the privilege of the "hauler.” As the privilege of the harvester mid that claimed for the hauler were at issue, we will treat the lower court’s reference to the "hauler” as a reference to both.