923 So.2d 170 (2006)
John RAINES, Jr. and Lawanda Thomas, Surviving Parents of John Raines III
v.
COLUMBIA LAKELAND MEDICAL CENTER, Dr. Gregory Collins and Western Indemnity Insurance Company.
No. 2005-CA-0243.
Court of Appeal of Louisiana, Fourth Circuit.
January 4, 2006.
*171 Lee W. Rand, Law Offices of Lee W. Rand, New Orleans, LA, H. Muldrow Etheredge, Covington, LA, for John Raines, Jr. and Lawanda Thomas.
George E. Cain, Ann Marie LeBlanc, James Waldron, Frilot, Partridge, Kohnke & Clements, L.C., New Orleans, LA, for Appellant, Louisiana Patient's Compensation Fund.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge MICHAEL E. KIRBY, Judge ROLAND L. BELSOME).
ROLAND L. BELSOME, Judge.
The appellant, the Louisiana Patient's Compensation Fund ("PCF"), appeals the trial court judgment awarding appellees, Lawanda Thomas and John Raines, Jr., $500,000.00[1] in general damages. The appellees subsequently answered the appeal with respect to the trial court's denial of their motion to amend the pleading in *172 order to allow judicial interest to run from the date of filing with the PCF, rather than the filing of the lawsuit as prayed for in appellees' petition. We affirm the trial court's judgment regarding damages, reverse the trial court's judgment regarding interest, and render on the issue of interest.

STATEMENT OF FACTS
On Saturday, February 15, 1997, Lawanda Thomas and John Raines, Jr. brought their approximately eight-month-old son, John Raines III, ("Baby Raines"), to the Lakeland Medical Center emergency room. His chief complaints were high fever for two days and chickenpox for three to four days.
Dr. Mary Zelenak, an emergency room physician, examined Baby Raines and noted that he had a moderate crop of lesions in all stages. He was discharged with the instructions to provide rest, increase fluids, administer Tylenol every four hours and administer Dimetapp if needed. Baby Raines' parents were also told to return to the emergency room if necessary and to follow up with his pediatrician.
On Tuesday morning, February 18, 1997, Baby Raines' mother returned him to the Lakeland Medical Center emergency room. At 8:45 a.m., the triage nurse who saw him noted that his chief complaint was edema at the pox site and that his temperature was 102.6. At 9:56 a.m., the emergency room physician, Dr. Gregory Collins, examined him and made a diagnosis of chickenpox and left otitis media (ear infection). Dr. Collins prescribed Cefzil, an oral antibiotic, for the ear infection, as well as, Tylenol every four hours and instructed Baby Raines' mother to see his pediatrician in two days. Baby Raines was discharged shortly thereafter at approximately 10:30 a.m.
Later that same day, around 3:40 p.m., Baby Raines' mother took him to the emergency room at the Medical Center of Louisiana at New Orleans/ University Hospital. Upon arrival, she reported that he had increased sleep, irritability, high fever, loose watery diarrhea, and vomiting. Emergency room physician, Dr. Gina Lagarde, felt that he had sepsis secondary to chicken pox and otitis media. Dr. Lagarde took him back to the crisis area of the emergency room where over the next approximately two hours, five physicians and several nurses tried to save Baby Raines' life. At 6:05 p.m., Baby Raines was pronounced dead. His death certificate listed the cause of death as sepsis due to or caused as a consequence of varicella infection (chickenpox infection).

PROCEDURAL HISTORY
On April 29, 1997, appellees filed a medical malpractice complaint against Dr. Collins and Lakeland Medical Center pursuant to the Louisiana Medical Malpractice Act ("LMMA"), La. R.S. 40:1299.41 et seq., which requires that all malpractice claims against PCF qualified health care providers be reviewed by a medical review panel prior to suit. On July 15, 1998, after a medical review panel had concluded, appellees filed their petition for damages against Dr. Collins and Lakeland Medical Center seeking survival action damages, damages for wrongful death of their son and in the alternative for the loss of a chance of his survival, together with legal interest from the date of judicial demand. Appellees subsequently voluntarily dismissed Lakeland Medical Center and the matter was tried before a jury on October 6, 7, and 8 of 2004.
Upon the close of the proceedings and when the jury had retired to deliberate, an oral motion to expand the pleadings to determine whether the pleadings could be enlarged to allow judicial interest to run from the date of filing with the PCF pursuant *173 to the Louisiana Medical Malpractice Act, rather than from the filing of the lawsuit as prayed for in appellees petition, was made by the appellees. The trial court ultimately denied this motion.
The jury returned with a verdict in favor of appellees. Specifically, the jury found it was more probable than not that Baby Raines had a chance of survival at the time of Dr. Collins' breach of the standard of care and Dr. Collins' breach of the standard of care more probably than not deprived Baby Raines of all or part of his chance of survival. Based on this finding, the jury awarded the appellees' $550,000 in general damages for the value of Baby Raines' lost chance of survival. The trial court subsequently reduced the award to the statutory limits set forth in the LMMA and rendered a "judgment on jury verdict" in favor of the appellees, against Dr. Collins, and his insurance company, in the amount of $100,000.00 together with interest from the date of judicial demand and against the PCF in the amount of $400,000.00 together with interest from the date of judicial demand.
Subsequent to the Court's signing of the judgment, the PCF intervened pursuant to the LMMA, and filed a motion for suspensive appeal raising only the issue of whether the trial court abused its discretion in awarding general damages. Appellees answered the appeal asserting that the trial court erred as a matter of law by denying their motion to amend the pleading in order to allow judicial interest to run from the date of filing with the PCF, rather than the filing of the lawsuit as prayed for in appellees' petition.

DISCUSSION
The first issue this Court will address is the PCF's contention that the trial court abused its discretion in awarding appellees, Lawanda Thomas and John Raines, Jr., $500,000.00 in general damages considering the fact that such an award is based solely on a lost chance of survival claim.
The standard of appellate review of a damage award is clear abuse of discretion. Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). The Supreme Court addressed the standards governing appellate review of general damage awards in Andrus v. State Farm Mutual Auto. Ins. Co., 95-0801 (La.3/22/96), 670 So.2d 1206. Specifically, the Supreme Court stated:
In appellate review of general damage awards, the court must accord much discretion to the trial court judge or jury. Reck v. Stevens, 373 So.2d 498 (La.1979). The role of an appellate court in reviewing awards of general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trial court. Id. Only if the reviewing court determines that the trial court has abused its "much discretion" may it refer to prior awards in similar cases and then only to determine the highest or lowest point of an award within that discretion. Coco v. Winston Indus., Inc., 341 So.2d 332 (La.1976).
Because discretion vested in the trial court is "great," and even vast, an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993). Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Id.

*174 Andrus v. State Farm Mutual Auto. Ins. Co., 95-0801 (La.3/22/96), 670 So.2d 1206, 1210.
This Court similarly held that "[a] general damage award assigned by a jury, although high or low, that does not shock the conscience should not be touched by an appellate court in light of the vast discretion that a finder of fact is granted in matters of general damages; the same applies to a general damage award of a trial judge." Andrews v. Dufour, XXXX-XXXX (La. 4 Cir. 6/2/04), 882 So.2d 15. This Court has further stated that "[i]n determining damages for a lost chance of survival, the factfinder may consider an abundance of evidence and factors, including evidence of percentages of chance of survival along with evidence such as loss of support and loss of love and affection, and any other evidence bearing on the value of the lost chance." Thoulion v. Jeanfreau, XXXX-XXXX (La.App. 4 Cir. 6/20/01), 794 So.2d 936, citing, Smith v. State Dept. of Health and Hosp., 95-0038 (La.6/25/96), 676 So.2d 543, 549. Moreover, "[d]amages awarded by a jury are to be reviewed in the light most favorable to the prevailing party." O'Riley v. City of Shreveport, 30,107 (La.App. 2 Cir. 01/23/98), 706 So.2d 213.
In this case, the fact finder considered all of the evidence, which illustrated the pain and suffering Baby Raines endured prior to his death, as well as the damages suffered by his mother and father. Applying standards recognized above in the present case, after reviewing the award of damages in light most favorable to the appellees, we find no abuse of discretion in the jury's $550,000.00 award of general damages, nor the reduced award of $500,000.00 by the trial court under the particular facts of this case. Accordingly, the trial court did not abuse its discretion in ultimately awarding $500,000.00 in damages to the appellees. Because we find there is no abuse of discretion, it is not this Court's place to look to prior awards in similar cases.
The second issue this Court will address is the appellees' contention that the trial court committed an error of law by denying plaintiffs' motion to amend their petition in order to allow judicial interest to run from the date of filing with the PCF, rather than the filing of the lawsuit as prayed for in appellees' petition.
To begin, La. C.C.P. art.1921 specifically states that "[t]he court shall award interest in the judgment as prayed for or as provided by law." (Emphasis added.) In Bickham v. Bickham, XXXX-XXXX (La.App. 1 Cir. 5/9/03), 849 So.2d 707, the First Circuit held that "[s]ince the word `shall' in statute providing that the court `shall award interest in the judgment as prayed for or as provided by law' is mandatory, the court lacks discretion to deny interest if interest is prayed for or provided for by law." The Supreme Court reiterated this concept in Smith v. Quarles Drilling Co., XXXX-XXXX, p. 5 (La.10/29/04), 885 So.2d 562, 565-66, which stated:
In order to obtain interest on an award, a litigant must pray for interest unless interest is allowed by law. Louisiana Code of Civil Procedure article 1921 provides: "Interest in the judgment shall be awarded as prayed for or as allowed by law." The "as allowed by law" language has been frequently interpreted to refer to judicial interest in tort cases. See LSA-R.S. 13:4203.
In the footnotes accompanying the above, the Supreme Court further articulated:
"Official Revision Comments-1960" following Article 1921 provides, in part:
The phrase "as provided by law" will cover the exception in the case of tort *175 claims, since in these cases interest attaches automatically, without being prayed for.
LSA-R.S. 13:4203 provides as follows:
Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, "ex delicto", which may be rendered by any of the courts.
It is well settled that interest provided by LSA-R.S. 13:4203 is due whether prayed for or provided in the judgment. Caldwell v. City of Shreveport, 150 La. 465, 90 So. 763 (1922); see also LeBlanc v. New Amsterdam Casualty Company, 202 La. 857, 13 So.2d 245 (1943), citing Layne v. Louisiana Power Light Co., 164 So. 672 (La.App. 2 Cir.1935).
Id. at 566 n. 5-6.
In addition, La. C.C.P. art 862 states that except as provided in Article 1703[2], a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief. Numerous circuits have granted legal interest in various cases when a party is entitled to such, even if relief is not demanded in the pleadings. For example, the Second Circuit held that "[a]lthough party does not pray for interest, judgment may and should include award of legal interest where legal interest is authorized by code article or statute." McConathy v. McConathy, 25,542 (La.App. 2 Cir. 2/23/94), 632 So.2d 1200. Moreover, the Third Circuit held that "[s]ecured party's failure to pray for interest did not preclude recovery of legal interest from the date of judicial demand in action for conversion". Deposit Guaranty Nat. Bank v. Central Louisiana Grain Co-op., Inc., XXXX-XXXX (La.App. 3 Cir. 5/5/99), 737 So.2d 167. The Fifth Circuit has similarly held that a "[j]udgment may and should include award of legal interest when party is entitled to such, even if such relief is not demanded in pleadings." Miller v. Louisiana Gas Service Co., 95-874 (La.App. 5 Cir. 6/25/96), 680 So.2d 52.
The Supreme Court has also recognized this issue in a footnote in Alexander v. Burroughs Corp., 359 So.2d 607, 614 n. 6 (La.1978), in which they stated:
It might be argued that, since plaintiffs only prayed for interest from date of judicial demand, they should be so limited. See B. Segall Company, Inc. v. Trahan, 276 So.2d 340 ([La.App.] 2d Cir. 1973), rev'd on other grounds, 290 So.2d 854 (1974). The appropriate response is the same as found in defendant's argument in brief on the issue of whether a credit for the buyer's use should be allowed absent a prayer for it. C.C.P. 862 provides that a final judgment shall grant the relief a party is entitled to, even if he has not demanded such relief in his pleadings.
Given the above law and jurisprudence, this Court finds that the appellees are entitled to interest from the date of filing of the complaint seeking a Medical Review Panel as stated in La. R.S. 40:1299.47. The LMMA and specifically La. R.S. 40:1299.47(M)[3] mandates that legal interest shall accrue from the date of filing of the complaint with the board. Accordingly, *176 the trial court is reversed regarding the issue of interest and the trial court's judgment is amended to award interest from the date their complaint had been filed with the PCF on April 29, 1997.

CONCLUSION
For the foregoing reasons, we affirm the trial court's judgment regarding damages, reverse the trial court's judgment regarding interest, and render on the issue of interest.
AFFIRMED IN PART; REVERSED IN PART; RENDERED IN PART.
MURRAY, J., Concurs with Reasons.
MURRAY, J., Concurring with Reasons.
The sole issue presented on this appeal is whether the record supports the jury's lump sum award to the Raines of $550,000 in general damages. Finding no abuse of discretion, the majority affirms that award. Although I agree with the result, I write separately to explain my reasons.
A trial court's award of general damages is reviewed on appeal under an abuse of discretion standard. See La. C.C. art. 2324.1 (providing that in assessing damages "much discretion must be left to the judge or jury.") In reviewing an award of general damages, the initial inquiry is "whether the particular effects of the particular injuries to the particular plaintiff are such that there has been an abuse of the `much discretion' vested in the judge or jury." 1 Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure § 14.14 (1999). The standard of review for abuse of discretion in awarding general damages is "difficult to express and is necessarily non-specific." Cone v. National Emergency Services, Inc., 99-0934, p. 8 (La.10/29/99), 747 So.2d 1085, 1089. The seminal case on that standard is Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), in which the court articulated it as follows: "the discretion vested in the trier of fact is `great,' and even vast, so that an appellate court should rarely disturb an award of general damages." 623 So.2d at 1261. For two reasons, I find this is not such a rare case.
First, a general damage award is proper in the survival action for the infant's suffering during the interval, albeit only a few hours, between when he was seen by Dr. Collins and when he died later that day. Although the infant would have endured much of the suffering during this interval regardless of Dr. Collins' malpractice, some of the suffering can be attributed to Dr. Collins' malpractice. For that suffering, a lump sum award of $100,000 would be just and fair.
Second, the remaining sum of $450,000 can be attributable to the infant's lost chance of survival. The Louisiana Supreme Court in Smith v. State, Dep't of Health and Hospitals, 95-0038 (La.6/25/96), 676 So.2d 543, outlined the requirements for valuing a lost chance of survival. Rejecting a rigid mathematical calculation for such loss, the Court opted to permit the fact finder to value the particular item of damagesthe lost chance as "a distinct compensable injury ... based on all the evidence in the record." Smith, 95-0038 at p. 6, 676 So.2d at 547. The Court in Smith further instructed that "[t]he jury's verdict of a lump sum amount of damages can be tested on appeal for support in the record by reviewing the percentage chances and the losses incurred by the tort victim and his or her heirs, and any other relevant evidence, thus providing assurance against speculative verdicts." Smith, 95-0038 at p. 11, 676 So.2d at 549.
In this case, the record reflects that none of the experts attempted to quantify *177 the infant's chance of survival. Rather, the Raines' expert, Dr. Jay Tureen, who is an expert in pediatrics and pediatric infectious diseases, testified that the infant would have had a "better chance at a better outcome" if proper antibiotic therapy had been started when Dr. Collins saw him. Even taking into consideration the jury's finding that the infant's chance of survival was less than fifty percent, I cannot say that the jury's award of $450,000 to the Raines for their infant's lost chance of survival is an abuse of discretion.
For these reasons, I respectfully concur.
NOTES
[1] The Jury awarded the appellees' $550,000.00 in general damages for the value of Baby Raines' lost chance of survival; however, the trial court reduced the award to the statutory limits set forth in the LMMA and rendered a "judgment on jury verdict" in favor of the appellees, against Dr. Collins, and his insurance company, in the amount of $100,000.00 together with interest from the date of judicial demand and against the PCF in the amount of $400,000.00 together with interest from the date of judicial demand.
[2] La. C.C.P. art. 1703 states: "A judgment by default shall not be different in kind from that demanded in the petition. The amount of damages awarded shall be the amount proven to be properly due as a remedy."
[3] La. R.S. 40:1299.47(M) states: "Legal interest shall accrue from the date of filing of the complaint with the board on a judgment rendered by a court in a suit for medical malpractice brought after compliance with this part."