996 So.2d 21 (2008)
John C. PALMER and Diane H. Palmer, His Wife
v.
Toussaint A. LECLERCQ, M.D.
No. 2007-CA-0604.
Court of Appeal of Louisiana, Fourth Circuit.
September 24, 2008.
*22 John D. Rawls, Attorney at Law, Sparks, NV, and Judith A. Gic, J.A.G.S. Consultant, L.L.C., Tarpon Springs, FL, for Plaintiffs/Appellees.
Clarence F. Favret III, Favret, Demarest, Russo & Lutkewitte, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge MICHAEL E. KIRBY, Judge DAVID S. GORBATY, Judge ROLAND L. BELSOME).
MICHAEL E. KIRBY, Judge.
Defendant, Toussaint A. Leclercq, M.D., appeals the trial court's October 27, 2006 judgment, granting exceptions of insufficiency of citation, nonconformity with La. C.C.P. article 891 and res judicata filed by plaintiffs, John and Diane Palmer, and denying defendant's request for preliminary injunction and stay of the judgment debtor rule examination.
The facts in this medical malpractice action were set forth in this Court's earlier opinion in Palmer v. Leclercq, XXXX-XXXX, XXXX-XXXX, 2004-2221 (La.App. 4 Cir. 12/14/05), 918 So.2d 633 (not designated for publication), as follows:
John Palmer and his ex-wife, Diane Palmer, brought a medical malpractice action against the on call neurosurgeon, Dr. Toussaint A. Leclercq ("Dr. Leclercq"), claiming his delay in coming to the hospital to diagnose and treat Mr. Palmer resulted in Mr. Palmer's paralysis extending to his hands.
On the night of Saturday, February 12, 1994, just before midnight, Mr. Palmer was involved in a single vehicle accident. Mr. Palmer was found outside the vehicle. He was brought by ambulance to Memorial Medical Center ("Mercy Hospital") emergency room with the chief complaint of not being able to move his legs.

*23 Dr. Jacquelyn Kirby Helm ("Dr. Kirby Helm") was the emergency room physician on duty that Saturday night and the early morning hours of Sunday, February 13, 1994. Dr. Kirby Helm's examination of Mr. Palmer revealed his paralysis extended from the mid-chest down. She further found he could move his arms, hands, and fingers. She ordered routine labs and a portable x-ray of the cervical spine. Dr. Kirby Helm reviewed the portable x-ray and did not see a fracture or any abnormality. The cervical collar was removed and the patient remained secured on the backboard. Upon learning that Mr. Palmer had multiple traumatic injuries, including paralysis, she had both the surgeon on call, Dr. Francisco Soler ("Dr. Soler"), and the neurosurgeon on call, Dr. Leclercq, paged to rule out internal bleeding and a spinal cord injury, respectfully. [sic]
Dr. Soler arrived at the emergency room sometime shortly after Mr. Palmer arrived. He examined Mr. Palmer and ruled out internal bleeding. However, efforts to reach Dr. Leclercq continued. Around 1:30 a.m. Dr. Kirby Helm made contact with Dr. Leclercq, described the patient's condition, and requested his presence in the emergency room. Dr. Leclercq refused to come to the hospital and told her to get x-rays of the spine and let him know.
Additional x-rays of Mr. Palmer's spine were taken and these were reported to Dr. Leclercq over the phone as being negative for a fracture. Even though Dr. Leclercq felt in his mind that Mr. Palmer probably had a fracture that was not diagnosed because of the difficulty of reading the x-ray, he again refused to come to the hospital.
After Dr. Leclercq's second refusal to come to the hospital, Dr. Kirby Helm decided to contact the neurologist on call, Dr. Friedman, to see if he could help her determine on which level the spinal injury was located, but she reached Dr. Thomas Krefft ("Dr. Krefft"), the neurologist who was taking calls for Dr. Freidman that night. When Dr. Krefft informed Dr. Kirby Helm that he was a neurologist and recommended that she call a neurosurgeon, Dr. Kirby Helm told him that she had called a neurosurgeon, but he refused to come to the hospital. Due to the circumstances, Dr. Krefft came to the hospital and conducted a neurological examination. His results confirmed that Mr. Palmer's lower extremities were paralyzed but determined that his upper extremities were completely normal. Specifically, Mr. Palmer had sensation and strength in his hands and fingers. Later that same Sunday morning Dr. Leclercq finally came to the hospital and saw Mr. Palmer. However, he did not document a complete neurosurgical examination into the medical chart.
On Monday morning Dr. David Kline ("Dr. Kline") saw Mr. Palmer on a neurosurgical consultation, staring [sic] at 7:30 a.m. He found numerous hand problems that were not present during Dr. Kirby Helm's hand examination shortly after midnight on Sunday morning and Dr. Krefft's hand examination at 4:00 a.m. on Sunday.
Mr. Palmer eventually had surgery in which he regained some gross motor function of his hands. Through rehabilitative therapy, Mr. Palmer regained some fine motor skills function in the right hand more than left; however, he remains wheelchair bound, paralyzed from the mid chest down into his legs.
Following trial, judgment was rendered on September 17, 2002 in favor of Mr. and *24 Mrs. Palmer and against Dr. Leclercq in the amount of $225,000.00 in damages and $15,084.75 in costs, with judicial interest from the date of judicial demand until paid. Dr. Leclercq subsequently filed a motion for new trial and motion to amend judgment, and the trial court rendered an amended judgment on May 27, 2004, limiting Dr. Leclercq's liability for plaintiffs' damages to $100,000.00 plus legal interest and costs pursuant to La. R.S. 40:1299.42(B). The amended judgment also stipulated that judicial interest was due from the date of judicial demand until paid. The Patients Compensation Fund ("PCF") subsequently intervened, Dr. Leclercq and the PCF appealed, and Mr. and Mrs. Palmer answered the appeal. In a decision rendered on December 14, 2005, this Court affirmed the award of damages to Mr. and Mrs. Palmer, allowed the intervention of the PCF, reversed the assessment of costs to Dr. Leclercq and amended the judgment to assess costs to the PCF. On April 17, 2006, the Louisiana Supreme Court denied writs. Palmer v. Leclercq, XXXX-XXXX (La.4/17/06), 926 So.2d 523.
On March 3, 2006, Mr. and Mrs. Palmer filed a "Second Motion to Test Sufficiency of Defendant's Suspensive Appeal Bond and Solvency of Defendant's Surety." This motion was filed after this Court's decision was rendered on December 14, 2005, but prior to the Louisiana Supreme Court's denial of writs on April 17, 2006. Prior to the filing of Mr. and Mrs. Palmer's motion, Dr. Leclercq tendered payment to them in the amount of $100,000.00 plus legal interest from date of judicial demand. On May 1, 2006, the trial court rendered judgment on Mr. and Mrs. Palmer's motion, amending the May 27, 2004 judgment to reflect that judicial interest on damages owed by Dr. Leclercq was to accrue "from the date of the filing of the complaint with the board." The court noted that as of February 28, 2006, such interest totaled $79,377.78. The May 2006 judgment was not appealed.
On August 17, 2006, Mr. and Mrs. Palmer filed a motion and order for judgment debtor rule examination. On September 27, 2006, Dr. Leclercq filed a petition for nullity. In his petition for nullity, Dr. Leclercq contends that the amended judgment rendered by the trial court on May 1, 2006 is an absolutely null judgment pursuant to La. C.C.P. articles 1951 and 2002, in that the court amended a final judgment regarding an issue other than phraseology or error of calculation. Dr. Leclercq asked for injunctive relief prohibiting Mr. and Mrs. Palmer from executing on the amended judgment or proceeding with the judgment debtor examination of Dr. Leclercq during the pendency of these proceedings.
In response to Dr. Leclercq's petition for nullity, Mr. and Mrs. Palmer filed an answer and exceptions of insufficiency of citation, nonconformity with La. C.C.P. article 891, res judicata, no cause of action and no right of action. Mr. and Mrs. Palmer's exception of insufficiency of citation is based on their contention that Dr. Leclercq's nullity action is improper because it was not filed as a separate suit with its own citation. The exception of nonconformity with La. C.C.P. article 891 is based on Dr. Leclercq's alleged failure to set forth the domicile of the parties in his petition. The res judicata exception is based on the fact that Dr. Leclercq did not appeal from the judgment rendered on May 1, 2006 amending the prior judgment that was rendered on May 27, 2004.
On October 27, 2006, the trial court rendered judgment, granting the exceptions of insufficiency of citation, nonconformity with La. C.C.P. article 891 and res judicata. The court denied Dr. Leclercq's request *25 for a preliminary injunction and a stay of the judgment debtor rule examination. In light of its other rulings, the court stated that it was unnecessary to consider plaintiffs' exception of no cause of action and no right of action. Dr. Leclercq now appeals the trial court's October 27, 2006 judgment.
On appeal, Dr. Leclercq argues that the trial court erred in granting the exceptions. The exceptions were filed in response to Dr. Leclercq's petition for nullity. Dr. Leclercq alleges that the trial court's judgment rendered on May 1, 2006 is an absolute nullity because it substantively amended the May 27, 2004 judgment to reflect that judicial interest on damages owed by Dr. Leclercq was to accrue "from the date of the filing of the complaint with the board," rather than "from the date of judicial demand" as specified in the May 27, 2004 judgment.
La. C.C.P. article 1951 states:
A final judgment may be amended by the trial court at any time, with or without notice, on its own motion or
(1) To alter the phraseology of the judgment, but not the substance; or
(2) To correct errors of calculation.
(Emphasis ours.)
An amendment to a judgment that adds to, subtracts from, or in any way affects the substance of the judgment, is considered a substantive amendment. McGee v. Wilkinson, XXXX-XXXX, p. 3 (La. App. 1 Cir. 4/2/04), 878 So.2d 552, 554. To alter the substance of a judgment, the proper recourse is a timely application for new trial, an action for nullity, or a timely appeal. Id.[1]
La. R.S. 40:1299.47(M) provides that in a medical malpractice case, "[l]egal interest shall accrue from the date of filing of the complaint with the [Patient's Compensation Fund Oversight] board on a judgment rendered by a court in a suit for medical malpractice brought after compliance with this part." (Emphasis ours.) In Raines v. Columbia Lakeland Medical Center, XXXX-XXXX (La.App. 4 Cir. 1/4/06), 923 So.2d 170, this Court reversed the trial court's ruling that plaintiffs were limited to interest from the date of filing of their lawsuit because that is what they requested in their petition. The Raines Court found that plaintiffs were entitled, by statute, to interest from the date of filing of the complaint with the board seeking a medical review panel regardless of the fact that they requested interest from the filing of the lawsuit in their petition.
In this case, Mr. and Mrs. Palmer requested interest from "the date of filing of the complaint in medical malpractice herein (or alternatively the date of judicial demand)," and the 2004 judgment awarded interest from date of judicial demand. The portion of the trial court's 2006 judgment holding that interest on damages owed by Dr. Leclercq was to accrue "from the date of the filing of the complaint with the board" did not change the substance of the 2004 judgment because according to this Court's interpretation of La. R.S. 40:1299.47(M) in Raines v. Columbia Lakeland Medical Center, supra, the date of judicial demand in a medical malpractice case is the date of the filing of the complaint with the board seeking a medical review panel, regardless of the date from which a plaintiff requests interest in a petition.
Even though the 2004 judgment was final at the time of the rendition of the *26 2006 amended judgment, La. C.C.P. article 1951 allows the trial court "at any time" to amend a final judgment to alter the phraseology of the judgment, but not the substance of the judgment. We conclude that the 2006 judgment merely altered the phraseology of the 2004 judgment to clarify that Mr. and Mrs. Palmer are entitled by operation of law to interest from the date of filing of the complaint with the board seeking a medical review panel. The 2006 judgment did not add to, subtract from, or in any way affect the substance of the 2004 judgment. Thus, the 2006 amended judgment did not contain an improper substantive amendment, and therefore, is not an absolute nullity.
It is undisputed that Dr. Leclercq did not timely appeal the 2006 amended judgment. One of the exceptions filed in response to Dr. Leclercq's petition was the peremptory exception of res judicata. The trial court granted this exception, finding that Dr. Leclercq acquiesced or waived any objection to the amended judgment by not appealing the same.
La. C.C.P. article 2003 states:
A defendant who voluntarily acquiesced in the judgment, or who was present in the parish at the time of its execution and did not attempt to enjoin its enforcement, may not annul the judgment on any of the grounds enumerated in Article 2002.
Dr. Leclercq did not allege that any of the vices of form listed in La. C.C.P. article 2002 are present in this case. Similarly, Dr. Leclercq did not allege that the 2006 judgment was obtained by fraud or ill practices, as required for a nullity action under La. C.C.P. article 2004.
The petition for nullity is based on Dr. Leclercq's allegation that the 2006 amended judgment is an absolute nullity because it amended a final judgment for a purpose other than the allowable purposes listed under La. C.C.P. article 1951, i.e., to alter phraseology or correct errors of calculation. As stated above, we find that the 2006 amended judgment did not alter the substance of the 2004 judgment, and therefore, is not an absolute nullity. Absent any allegations of vices of form or substance as listed in La. C.C.P. article 2002 and 2004, Dr. Leclerq acquiesced in the 2006 amended judgment by not appealing the same. Thus, we find that the trial court did not err in granting the peremptory exception of res judicata.[2]
La. C.C.P. article 923 provides that the function of the peremptory exception is to have the plaintiff's action declared barred by effect of law. Dr. Leclercq is the plaintiff in the petition for nullity filed in the trial court. Because the Palmers' exception of res judicata was correctly granted, Dr. Leclercq's nullity action must be dismissed. Based on our holding, we need not address Dr. Leclercq's arguments regarding the other exceptions filed by Mr. and Mrs. Palmer.
For the reasons stated above, we affirm the trial court's granting of the exception of res judicata, and remand this matter for further proceedings consistent with this opinion.
AFFIRMED AND REMANDED.
NOTES
[1] Citing the case of Frisard v. Autin, 98-2637 (La.App. 1 Cir. 12/28/99), 747 So.2d 813, the First Circuit in McGee v. Wilkinson, XXXX-XXXX (La.App. 1 Cir. 4/2/04), 878 So.2d 552, noted that a trial court may amend a judgment substantively on its own motion with the consent of the parties.
[2] We note that the plaintiffs in the instant case did not raise the issue of the judicial interest award in the 2004 appeal. The First Circuit in Melancon v. Insurance Corp. of America, 633 So.2d 231 (La.App. 1 Cir.1993), found in a medical malpractice case that the plaintiffs' failure to raise the issue of interest on appeal precluded the trial court from amending the date from which interest was to accrue. However, we respectfully disagree with the First Circuit on this issue.