TOBIAS, J.,
Concurs in Part, Dissents in Part, and Assigns Reasons.
1,1 agree with the majority that the doctrine of contra non valentem agere nulla cmrit praescnptio applies in this case. In my view, the facts support the application of the doctrine. A person such as Mr. Guillot would in almost all circumstances assume that he did not shift his automatic transmission into the “park” mode as he hurriedly left the vehicle to retrieve the cell phone that had been left inside the house. An ordinary person recognizes the excitement surrounding a woman entering labor and human nature directing speedy actions to get the woman to the health care provider for delivery of the child. Only when as a result of the newspaper reporter’s inquiries were the plaintiffs’ interests aroused that a defect in the automatic transmission and its gearshift lever may have been involved in causing the accident and injury did the prescriptive period commence to run.
I do, however, disagree with the majority’s heavy reliance on cases dealing with medical malpractice to support the application of contra non valentem in this case. Medical malpractice cases are quite different from a products liability case 12such as the case at bar. A whole different line of jurisprudence has arisen to support contra non valentem in medical malpractice because of our statutory scheme addressing malpractice. Rather, I would reason from the specific facts of this case that adequately support the application of the doctrine for it is well-established in our jurisprudence that “[prescription does not run against one who is ignorant of the existence of facts that would entitle him to bring a malpractice action as long as such ignorance is not willful and does not result from his neglect.” Young v. Clement, 367 So.2d 828, 830 (La.1979). The trial court was neither manifestly in error nor clearly wrong in finding that the plaintiffs case against the corporate defendants was not prescribed.
Although the preferred methodology in a jury case for handling a Daubert/Foret challenge to an expert’s qualifications or opinion is a separate hearing rather than exposing the jury to the expert’s possibly inadmissible opinion, I agree with the majority that the trial court’s methodology is not reversible error. If an error exists in this case, it is harmless.
Likewise, I agree with the majority that the trial judge was well within his discretion in this case to admit evidence about other similar incidents involving Chrysler vehicles, recognizing the potential danger of prejudice and forcing and/or enticing Chrysler to explain how the other incidents were dissimilar and thereby needlessly expanding the length of the trial. *199 La. C.E. art. 403.[1] Further, I find no error in the trial court’s admission of evidence that Chrysler’s New Orleans counsel sent by facsimile transmission to Chrysler’s Office of General Counsel a copy of the police report about the Guillots’ accident. If anything, such practice demonstrates that Chrysler was concerned about the quality and safety of the ^vehicles that they manufactured; by receiving the reports of accidents nationwide, they would be in a better position to monitor whether a particular vehicle that they sold had a higher incidence of similar problems that could be corrected earlier. That a plaintiffs counsel could raise the inference that that the practice was somehow sinister is of no moment. It is a business practice, the evidence of which is admissible under the Louisiana Code of Evidence.
The assessment of one percent of the fault for the accident to Mr. Guillot by the jury is, however, an abuse of discretion, manifestly erroneous, and clearly wrong as a matter of law.
La. R.S. 32:145 states:
No person driving or in charge of any motor vehicle shall permit it to stand unattended without first stopping the motor, locking the ignition, removing the key, and effectively setting the brake thereon, and, when standing upon any grade, turning the front wheels to the curb or side of the highway.
This statute is generally applied to public highways and roadways and has no direct application to vehicles located on private property such as where the Guillots’ vehicle was located when Mr. Guillot exited the vehicle leaving the engine running, the keys in the ignition, and the parking brake unset. However, the statute does express the legislature’s view[2] of the danger of leaving unattended a vehicle with the engine running and the parking brake unset.
In Storey v. Parker, 13 So.2d 88 (La.App. 1st Cir.1943), the defendant, Mr. Parker, drove his automobile with an automatic transmission (a new technological innovation at the time) for servicing at a service station. He exited the vehicle, leaving the engine running, the vehicle in gear, and the parking brake unset in order to help his wife get out from the passenger seat. The car remained stationary for a few moments, but began to move forward after about a minute per the court’s misestimate. The moving vehicle struck and severely injured the plaintiff, Mr. Storey. The court concluded that the direct cause-in-fact (proximate cause at the time) of the accident “was the leaving of the control lever in high [in gear] by Mr. Parker while the motor was kept running and without the hand brake having been set.” Id. at 94.
Storey, although somewhat dated by its age, expresses the duty of a person leaving a vehicle running and unattended on private property. La. R.S. 32:145 expresses the duty of a person on public property. The duty of the driver is the same. One does not leave a car running without in the very least setting the parking brake.
In this regard, it clear that Mr. Guillot was negligent; but no reasonable person could fix his comparative fault at a mere one percent. I find that the lowest percentage of fault that a factfinder could set Mr. Guillot’s fault is at twenty-five percent and that is the percentage I would set in *200 this case. Accordingly, I would amend the jury verdict to increase Mr. Guillot’s fault to twenty-five percent from one percent and adjust the quantum of damages accordingly.
I cannot agree that each plaintiff is entitled to $1,000,000 for the wrongful death of their infant son, Collin, who lived but 17 days. As a matter of law, our jurisprudence does not support that quantum; it is excessive, an abuse of discretion, manifestly erroneous, and clearly wrong.
The specific interrogatory answered by the jury read as follows:
Loss of Collin’s love, affection and companionship and mental pain, suffering and distress resulting from Collin’s death:
This interrogatory in the context of the entire jury interrogatory form asks the quantum of damages, if any, for Collin’s wrongful death. A thorough' quantum search of our jurisprudence reveals that the highest reported award for a “lost Lchance of survival,” equivalent to a wrongful death in this case, for an infant (eight months old) is $550,000, but was reduced to $500,000 by virtue of the $500,000 damage cap in medical malpractice. Raines v. Columbia Lakeland Medical Center, 05-0243, pp. 5-7 (La.App. 4 Cir. 1/4/06), 923 So.2d 170, 173-74.[3] The Louisiana Supreme Court was never asked to review the Raines decision.
An award for wrongful death is low for a person of young age and gradually increases as one ages, where abilities and relationships can be determined and assessed. See, e.g., Anderson v. New Orleans Public Service, Inc., 572 So.2d 775, 777-78 (La. App. 4th Cir.1990), rev’d in part and aff'd in part, 583 So.2d 829, 833-34 (La.1991).
Under our current jurisprudence, I find based upon the Guillots’ testimony that the highest award that a reasonable factfinder could award for the death of a 17-day old infant is $500,000, and I would set that amount in this case. I would reduce each of the $1,000,000 awards to $500,000, to be reduced further by the comparative fault attributable to Mr. Guillot addressed above.
Additionally, I cannot agree that Mr. Guillot is entitled to recover for both loss of consortium and loss of enjoyment of life as set forth in the jury interrogatories. The recovery is duplicative. McGee v. AC & S, Inc., 05-1036, pp. 12-13 (La.7/10/06), 933 So.2d 770, 779. The Supreme Court said, “allowing family members to recover for both their loss of consortium and their enjoyment of life would be duplicative and would not be authorized by La. C.C. art. 2315(B).” Id. And recovery for “the loss of enjoyment of life suffered by the primary victim’s family members ... is dupli-cative of their wrongful death claim.” Id., p. 14, 933 So.2d at 780. We are required to reverse to zero Mr. Guillot’s $200,000 award for loss of enjoyment of life.
La. C.C. art. 2315.6 states:
[fiA. The following persons who view an event causing injury to another person, or who come upon the scene of the event soon thereafter, may recover damages for mental anguish or emotional distress that they suffer as a result of the other person’s injury:
(1) The spouse, child or children, and grandchild or grandchildren of the injured person, or either the spouse, the child or children, or the grandchild or grandchildren of the injured person.
(2) The father and mother of the injured person, or either of them.
(3) The brothers and sisters of the injured person or any of them.
(4) The grandfather and grandmother of the injured person, or either of them.
*201 B. To recover for mental anguish or emotional distress under this Article, the injured person must suffer such harm that one can reasonably expect a person in the claimant’s position to suffer serious mental anguish or emotional distress from the experience, and the claimant’s mental anguish or emotional distress must be severe, debilitating, and foreseeable. Damages suffered as a result of mental anguish or emotional distress for injury to another shall be recovered only in accordance with this Article.
[Emphasis supplied.]
This article is statutory authority for bystander or “Lejeune ” damages. Per Lejeune v. Rayne Branch Hosp., 556 So.2d 559 (La.1990), to recover bystander damages, (a) one must “either view the accident or injury-causing event or come upon the accident scene soon thereafter and before substantial change has occurred in the victim’s condition ...; (b) [t]he direct victim of the traumatic injury must suffer such harm that it can reasonably be expected that one in the plaintiffs position would suffer serious mental anguish from the experience ...; (c) [t]he emotional distress sustained must be both serious and reasonably foreseeable to allow recovery, ... going well beyond simple mental pain and anguish ... [,]for the emotional injury ... must be both severe and debilitating;” [and] (d) all claimants must have a close relationship with the victim. Id. at 570
Only an unborn child born alive is a person from the moment of conception “for whatever relates to its interests.” La. C.C. art. 26; see also Wartelle v. Women’s & Children’s Hosp., Inc., 97-0744, pp. 12-13 (La.12/2/97), 704 So.2d 778, 784-85. It follows, therefore, that Mrs. Guillot’s Le-jeune damages cannot stand (being contained within other awards for damages by the jury). Further, a part of the damages to Mr. Guillot must be reduced to $200,000 as he did not witness actual injury to Collin, but rather only witnessed injury occurring to his wife. While I would not award Collin’s sister, Madison, Lejeune damages for injury to Collin, I find the $50,000 set by the jury is an appropriate award under the circumstances for the emotional damages she sustained due to her witnessing injury to her pregnant mother. Thus in summary, I would reduce the awards of Lejeune damages to Mrs. Guillot to zero and to Mr. Guillot to $200,000, but maintain the Lejeune damages for Madison at $50,000, being the highest awards that our law will support on the facts of this case.
In all other respects, I agree with the majority’s conclusions as the quantum of recovery to be reduced by the comparative percentage of fault of Mr. Guillot as I have found applicable above.
For the foregoing reasons, I respectfully concur in part and dissent in part from the decision of the majority.

. C.E. art. 403 states:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.

. Stated another way, it is the solemn expression of legislative will. La. C.C. art. 2.

. Raines was authored by the author of the majority opinion herein.